**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**JOHN DOE,**

**Plaintiff,**

**v.** **Civil Action No. 3:25-cv-00743**

**MARSHALL UNIVERSITY**
**BOARD OF GOVERNORS AND**
**KELLY AMBROSE in her**
**individual and official capacities.**

**Defendants**

# MEMORANDUM OF LAW IN SUPPORT OF MARSHALL UNIVERSITY BOARD OF GOVERNORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## I. Introduction

The Defendant Marshall University Board of Governors (hereinafter "MUBOG"), by the undersigned counsel, hereby submits its Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint as follows:

## II. Statement of Facts

The Plaintiff attended Marshall University from 2019 to 2023. *See* Complaint, ECF 31, pg. 2. While at Marshall, the Plaintiff was the subject of three separate sexual misconduct and stalking investigations, the first one beginning in November of 2022. *Id*. at ¶¶ 19. Marshall University, through its investigator, Kelly Ambrose, investigated each of these sexual misconduct complaints. *Id*. at ¶ 29. With respect to the first complaint against Plaintiff, Alleged Victim #1 claimed Plaintiff engaged in sexual contact without her consent. *Id*. at ¶51. Following an investigation and review of the matter through multiple hearings in front of a hearing panel, Plaintiff was found responsible

and expelled from Marshall University. *Id*. at ¶75. Plaintiff later appealed this decision, which was denied. *Id*. at ¶87.

Regarding the second complaint against Plaintiff, Reggie Roe alleged that Plaintiff kissed him without his consent while at a gathering at Plaintiff's apartment with several other individuals. *Id*. at ¶88. Following an investigation and review of the matter by a review hearing panel, Plaintiff was found responsible. *Id*. at ¶95. Plaintiff appealed this decision and his appeal was denied. *Id*. at ¶97.

As to the third complaint against Plaintiff, Jerry Woe claimed that Plaintiff was stalking and/or following him at Marshall University. *Id*. at ¶99. As part of this investigation a "No Contact Order" was put in place between Plaintiff and Jerry Woe. *Id*. at ¶101. Following an investigation and review of the matter by a review hearing panel, Plaintiff was found not responsible for the alleged stalking. *See* Exhibit L to Plaintiff's Amended Complaint (ECF 15) at pg. 13. However, Plaintiff was found responsible for violating the "No Contact Order" following an acknowledgment by Plaintiff that he had violated the order. *Id*. at ¶107.

On December 18, 2025, Plaintiff filed his original Complaint. On April 2, 2026, the Defendant moved to dismiss the claims asserted within the original Complaint. On April 16, 2026, the Plaintiff filed his Amended Complaint. On April 21, 2026, the Court denied the Defendants' respective Motions to Dismiss as being moot.

Subsequently on April 30, 2026, Defendants Ambrose and MUBOG moved to dismiss Plaintiff's Amended Complaint. *See* ECF 21-24. In response to these motions to dismiss Plaintiff sought leave from the Court to amend his Complaint once again. *See* ECF 27. On July 1, 2026, the Court granted Plaintiff's Motion for leave and denied the Defendants' respective Motions to Dismiss as being moot.

In his Second Amended Complaint (ECF 31) filed against Defendants Kelly Ambrose, the Marshall University Board of Governors ("MUBOG"), and Jessica Rhodes, the Plaintiff asserted eight separate counts. Below are the specific claims being asserted in the Second Amended Complaint against Defendant, MUBOG in this matter:

(1) Count I- Title IX claim against the MUBOG for gender bias, gender discrimination, selective enforcement of its policies, and erroneous outcome;

(2) Count II- 42 U.S.C. § 1983 claim against all Defendants for violation of due process and equal protection under the First and Fourteenth Amendment;

(3) Count V- Intentional and Negligent Misrepresentation Claim against all Defendants;

(4) Count VII- a breach of contract claim against the MUBOG.[1]

In summary, Plaintiff's claims against Defendant MUBOG is that they violated Marshall's policies procedures, and overall failed to provided Plaintiff with a proper grievance process at Marshall University. *See* ECF 31, generally.

## III. <u>Legal Standard</u>

The Federal Rules of Civil Procedure provide that a trial court must dismiss a plaintiff's complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint fails to state a claim when, viewing the factual allegations as true and in

[1]Of note, Plaintiff's Complaint does not make clear whether Count VI for Aiding and Abetting in Violation of the West Virginia Human Rights Act is also alleged against this Defendant. To the extent Plaintiff is bringing this claim against this Defendant, this Defendant shall address the same herein.

a light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim that is plausible on its face." *Bell*, 550 U.S. a 570.

Determining whether the complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw upon its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

When analyzing a motion to dismiss, the court is allowed to "consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Patrick v. PHH Mortg. Corp.*, 937 F. Supp. 2d 773, 782 (N.D. W. Va.) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference."); *see also Ballengee v. CBS Broad., Inc.*, No. 2:17-cv-00212, 2017 U.S. Dist. LEXIS 229402, at *2 (S.D. W. Va. Oct. 23, 2017).

## IV. Argument

### A. Plaintiff's claims do not fall under Title IX and must be dismissed.

1. Plaintiff was not found responsible for violating Title IX.

Plaintiff was never investigated or punished under Title IX. As Plaintiff acknowledges in relation to Allegation #2, the alleged incident occurred off campus at "a gathering at Plaintiff's

apartment with several other individuals." ECF 15, ¶88. Further, while Plaintiff references a decision made regarding this allegation following a Title IX hearing, the truth is Plaintiff was found responsible by a ***non-Title IX hearing panel***.

Similarly, as it relates to allegation #1, the alleged sexual assault occurred off campus at Plaintiff's apartment. *See* ECF 15, Ex. H. While Plaintiff contends he was found responsible by a Title IX hearing panel in relation to this allegation, a plain reading of this panel's decision illustrates that Plaintiff was found responsible and expelled from Marshall by a ***non-Title IX hearing panel***. *Id*.

Finally, as it relates to Allegation #3, Plaintiff was found not responsible for a violation of Title IX and was only found responsible for a procedural infraction in violating a no contact order due to Plaintiff's own admission that he had violated the order. ECF 31, ¶104, 107, Exhibit L. As such, despite Plaintiff's best efforts to link these cases to Title IX, a clear look at the actual facts in this case demonstrate that Plaintiff was never found to have violated Title IX.

2. <u>A University cannot be held liable for violation of Title IX when it exercises no control over the context of the harassment.</u>

Title IX prohibits federally supported educational institutions from practicing discrimination on the basis of sex. 20 U.S.C. § 1681(a) To be held liable under Title IX, defendants must exercise "substantial control over both the harasser ***and the context*** in which the known harassment occurs." *Doe v. Round Valley Unified Sch. Dist*., 873 F. Supp. 2d 1124, 1136 (D. Ariz. 2012) (emphasis added) (quoting *Davis*, 526 U.S. at 645) (finding that the defendant school did not exercise substantial control over the "context" of the alleged sexual harassment because "[a]ll of it took place off campus"). This rule was codified on August 14, 2020, in 34 CFR § 106.44(a), applying Title IX applies to "locations, events, or circumstances" where "recipient exercised substantial control over both the respondent and the context." Notably, dismissal of a Title IX

complaint is mandated when the alleged conduct "did not occur in the recipient's education program or activity." 34 C.F.R. § 106.45(b)(3)(i).

As a general principle, then, Title IX does not hold funding recipients liable for peer harassment that occurs outside of an environment subject to the recipients' substantial control. *E.g., Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist*., 511 F.3d 1114, 1117–18, 1121 n.1 (10th Cir. 2008).

Numerous courts across the country have consistently dismissed Title IX lawsuits filed over alleged assaults that occurred off campus. *See Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 563 (4th Cir. 2025)*(affirming Roe v. Marshall Univ. Bd. of Governors*, No. 3:22-0532, 2024 U.S. Dist. LEXIS 110782, at *21 (S.D. W. Va. June 24, 2024) (finding Marshall University does not have substantial control over the context of harassment occurring at private off-campus apartment)); *See also O'Shea v. Augustana Coll*., 593 F. Supp. 3d 838, 847 (C.D. Ill. 2022) (where the Court held the university "did not exercise control over the context in which the assaults occurred" where the alleged assaults took place at a bar off campus); *see also, Doe v. University of Missouri*, Case No. 19-cv-04229-NKL, 2022 WL 4043458, at *15 (W.D. Mo. Aug. 30, 2022) (university's very close control over student athlete was not sufficient to establish that sexual harassment which occurred off campus was under the control of the university); *Horocofsky v. City of Lawrence*, No. 20-2529-EFM, 2022 WL 1421554, at *15 (D. Kan. May 5, 2022), reconsideration denied sub nom. *Horocofsky v. City of Lawrence, Kansas*, No. 20-2529-EFM, 2022 WL 2802316 (D. Kan. July 18, 2022) (where Title IX complaint dismissed when Plaintiff was injured through the actions of a fellow student outside the University's programs or activities); *Samuelson v. Oregon State Univ*., 162 F. Supp. 3d 1123, 1131–32 (D. Or. 2016), aff'd, 725 F. App'x 598 (9th Cir. 2018) ("Here, Ms. Samuelson's harasser drugged Ms. Samuelson at an off-

campus party. OSU had no control over an off-campus party at an apartment that simply happened to be located in the same city as the university."); *Doe v. Univ. of Scranton*, No. 3:19-CV-01486, 2020 WL 5993766, at *8 (M.D. Pa. Oct. 9, 2020) (dismissing a Complaint where the conduct took place off campus even though the school "had the ability to refer students for disciplinary action based on off-campus conduct").

Here, as it relates to the complaint investigations in allegations #1 and #2, Marshall University did not exercise "substantial control" over the off-campus context in which the alleged harassment(s) occurred. The alleged events occurred at an apartment off campus that were part of any event sponsored by the University. Marshall University cannot investigate off campus conduct under the current Title IX regulations. *See* 34 C.F.R. § 106.45(b)(3)(i) (where dismissal of off campus conduct is mandated).

As such, each of these allegations were investigated pursuant to Marshall's Non-Title IX procedures and were evaluated by a non-title IX hearing panel. When the allegations involve off campus environments and activities, the regulations do not permit the University to conduct a Title IX investigation. Because there was no Title IX investigation into these matters, Plaintiff's Title IX claims must be dismissed as they relate to Allegations #1 and #2 because the Plaintiff has failed to state a claim for which relief can be granted.

3. <u>Plaintiff's Title IX claims relating to Allegation #3 fails as a matter of law because he was found to have not violated Title IX.</u>

To prevail on an erroneous outcome claim, a plaintiff must (1) assert that he "was innocent and wrongly found to have committed an offense," (2) establish "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," (3) demonstrate "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Doe v. Fairfax Cnty. Sch. Bd.*, 832 F. App'x 802, 804-05 (4th Cir. 2020) (quoting *Yusuf*

*v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). By contrast, a selective enforcement "claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id*.

In this case, as it relates to Allegation #3 in this case, Plaintiff was found not responsible for violating Title IX in relation to the stalking allegation. ECF 31, ¶102, Exhibit L. The only substantiated finding against Plaintiff in relation to Allegation #3 was the finding of responsibility for violating a no contact order, which Plaintiff admitted to. ECF 31, ¶104, Exhibit L. As such, there is no viable claim that Marshall violated Title IX when the Plaintiff was exonerated under Title IX and this claim should be dismissed for failing to state a claim for which relief can be granted.

**B. Sovereign immunity bars the Plaintiff's WVHRA and 42 U.S.C. §1983 claims against the MUBOG.**

It is well-settled that Marshall University, as well as the MUBOG, is an agency of the State of West Virginia. *See, Zimmeck v. Marshall Univ. Bd. of Governors*, 2013 U.S. Dist. LEXIS 149979, 16-17; *see also, Graf v. West Virginia University*, 429 S.E.2d 496 (W. Va. 1992). Any claim brought against a state agency is considered one against the State of West Virginia itself. *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468 (4th Cir. 1988).

The State of West Virginia has sovereign immunity from suit pursuant to the Eleventh Amendment of the United States Constitution and Article VI, § 35 of the West Virginia Constitution. The Eleventh Amendment bars lawsuits against a State brought by its own citizens or any citizens of another State. *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (2009). This protection not only protects the state itself, it also protects state agencies, divisions, departments, officials, and other "arms of the State." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 78 (1989) (emphasis added); *see also, Roach v. Burch*, 825 F.Supp. 116, 118 (N.D. W.

Va. 1993). As a result, suits against state agencies are considered as suits against the state itself. *Will*, 491 U.S. at 71.

While there are three narrow exceptions to this immunity, as set forth in *Lee-Thomas v. Prince George's Cnty. Publ. Schs.,* 666 F.3d 244 (4th Cir. 2012), none of them apply here. First, Congress has not expressly and unequivocally abrogated West Virginia's sovereign immunity, with the intent to do so, for the claims asserted by the plaintiff in this civil action. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Secondly, the Plaintiff has not sought prospective injunctive relief against Marshall University. *See Frew we rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Finally, there has been no consent on the part of Marshall University, either directly or constructively, in expressly waiving its Eleventh Amendment immunity protection and consent to suit in federal court. *See Lapides v. Bd. of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 618 (2002); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Westinghouse Elec. Corp. v. West Va. Dept. of Highways*, 845 F.2d 468, 470 (4th Cir. 1988).

Direct waiver by statute or constitution may be found only where the State has indicated its intent to subject itself to suit in federal court "by the most express language, or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Westinghouse,* 845 F.2d at 470, citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909). The State's waiver of immunity from suit in federal court must be an unequivocal statement of the State's intention to subject itself to suit in federal court. *Westinghouse,* 845 F.2d at 470, citing *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944); *Smith v. Reeves*, 178 U.S. 436, 441 (1900). Further, a State's waiver of immunity in state court will not meet the

unequivocal standard necessary to abrogate the Eleventh Amendment immunity in federal court. *Westinghouse,* 845 F.2d at 470-71.

Just as in *Westinghouse,* the West Virginia Constitution contains no provision subjecting the state to suit in federal court. Rather, the West Virginia Constitution clearly provides "[t]he State of West Virginia shall never be made defendant in any court of law or equity except the state of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee." *W. Va. Const.* art. VI, Sec. 35. (emphasis added).

This Court has previously held on multiple occasions that Marshall University enjoys sovereign immunity from claims under the WVHRA, despite allegations of violations of federally protected civil rights. *See Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.*, No. CV 3:18-0711, 2019 WL 1386403, at *8 (S.D.W. Va. Mar. 27, 2019); *See also Wei-Ping Zeng v. Marshall Univ*., No. 3:17-cv-03008, 2019 U.S. Dist. LEXIS 51841, at *17 (S.D. W. Va. Feb. 5, 2019). The same holds true here, and Plaintiff's WVHRA claim against Marshall University should be dismissed.

Similarly, this Court has previously addressed the issue of MUBOG being sued for a claim brought under 42 U.S.C. §1983. *See Zimmeck v. Marshall Univ. Bd. of Governors*, 2013 U.S. Dist. LEXIS 149979, 16-17 (S.D. W. Va. Oct. 18, 2013). In *Zimmeck*, Plaintiff alleged the Defendants violated her civil rights and that she is therefore entitled to relief under 42 U.S.C. § 1983. *Id*. at *13. The Court addressed Eleventh Amendment Sovereign Immunity as it relates to the MUBOG at length, ultimately concluding the MUBOG was immune from Plaintiff's 42 U.S.C. §1983 claims. *Id*. at *13-22. As the same is true in the present case, Plaintiff's 42 U.S.C. §1983 claim(s)

against the MUBOG must be dismissed as this Defendant is immune from the same under the Eleventh Amendment.

In the instant case, Plaintiff's WVHRA and 42 U.S.C. §1983 claims are unquestionably barred by Eleventh Amendment sovereign immunity. There is no exception that can be applied which would defeat this sovereign immunity for these claims. The Plaintiff has not plead any facts which would give rise to any exception to protect the MUBOG from its sovereign immunity. In light of the foregoing, these claims brought against the MUBOG must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the *Federal Rules of Civil Procedure*.

**C. The Plaintiff's Breach of Contract Claim fails to state a claim upon which relief may be granted as the MUBOG is immune from the same.**

As to the plaintiff's breach of contract claim, the MUBOG is also entitled to sovereign immunity for this claim. *Zimmeck v. Marshall Univ. Bd. of Governors*, No. 3:13-14743, 2013 U.S. Dist. LEXIS 149979, at *23 (S.D. W. Va. Oct. 18, 2013). In *Zimmeck*, the plaintiff filed a Complaint against the Marshall University Board of Governors and five individuals affiliated with Marshall University. *Id* at *2. In the Complaint, the plaintiff alleged that Marshall University breached the express and implied contract that existed between Plaintiff and Marshall University. *Id* at *22. However, this Court previously ruled that "regardless of the type of relief sought…Plaintiff's claim against Marshall University for breach of contract is barred by the Eleventh Amendment." *Zimmeck* at *23; *see also Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.,* 2019 U.S. Dist. LEXIS 51321, at *26 (finding Plaintiff's breach of contract claim against Marshall University Board of Governors barred by Eleventh Amendment Immunity); *see also Sarkissian v. W. Va. Univ. Bd. of Governors,* No. 1:05-cv-144, 2007 U.S. Dist. LEXIS 32881, 2007 WL 1308978 (N.D. W. Va. May 3, 2007) (finding public university West Virginia University immune under the Eleventh Amendment from breach of contract claim).

In this case, the Plaintiff has asserted a breach of contract claim against Marshall University. As set forth above, Marshall University is entitled to immunity from such a claim. Therefore, Plaintiff's breach of contract claim must be dismissed as MUBOG is immune from the same.

**D. Plaintiff's intentional and negligent misrepresentation claims against the MUBOG are barred by sovereign immunity.**

As discussed at length above, the MUBOG is an agency of the State of West Virginia who enjoys sovereign immunity from suit pursuant to the Eleventh Amendment unless one of the three narrow exceptions to this immunity set forth in *Lee-Thomas v. Prince George's Cnty. Publ. Schs.,* 666 F.3d 244 (4th Cir. 2012) apply. *See also Zimmeck v. Marshall Univ. Bd. of Governors*, 2013 U.S. Dist. LEXIS 149979, 16-17 (finding Marshall University and the MUBOG an agency of the State of West Virginia); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 78 (finding that sovereign immunity under the Eleventh Amendment protects a State's agencies from suit).

While there are three narrow exceptions to this immunity, none of them apply here. First, Congress has not expressly and unequivocally abrogated West Virginia's sovereign immunity, with the intent to do so, for the claims asserted by the plaintiff in this civil action. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Secondly, the Plaintiff has not sought any specific prospective injunctive relief against Marshall University. *See Frew we rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Finally, Marshall University has not consented, either directly or constructively, to expressly waive its Eleventh Amendment immunity protection and consent to suit in federal court. *See Lapides v. Bd. of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 618 (2002); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Westinghouse Elec. Corp. v. West Va. Dept. of Highways*, 845 F.2d 468, 470 (4th Cir. 1988).

Direct waiver by statute or constitution requires that the State indicate its intent to subject itself to suit in federal court "by the most express language, or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Westinghouse,* 845 F.2d at 470, citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909).

Just as in *Westinghouse,* the West Virginia Constitution contains no provision subjecting the state to suit in federal court. Rather, the West Virginia Constitution clearly provides "[t]he State of West Virginia shall never be made defendant in any court of law or equity except the state of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee." *W. Va. Const.* art. VI, Sec. 35. (emphasis added).

Here, as none of the exceptions to sovereign immunity under the Eleventh Amendment are applicable to Plaintiff's tort based misrepresentation claims, Defendant MUBOG is entitled to sovereign immunity, and Count V of Plaintiff's Second Amended Complaint must be dismissed against the MUBOG.

**E. Even if the MUBOG is not entitled to sovereign immunity from Plaintiff's negligent and intentional misrepresentation claims, Count V still fails to state a claim upon which relief can be granted.**

Under West Virginia law, a claim for negligent misrepresentation must allege that the defendant: (1) owed a duty to provide the plaintiff with information; (2) made an erroneous statement when in fact the defendant had no knowledge about the subject, and (3) thereby misled the plaintiff, causing the plaintiff's injury. *Folio v. City of Clarksburg*, 221 W. Va. 397, 655 S.E.2d 143, 151 (2007) (quoting Syl. Pt. 1, *James v. Piggott*, 70 W. Va. 435, 74 S.E. 667 (1910)); *see also HSBC Bank USA v. Resh*, No. 3:12-cv-00668, 2013 U.S. Dist. LEXIS 18797, at *29 (S.D. W. Va. Jan. 25, 2013).

Further, fraud includes intentional misrepresentation and the elements required to prove each tort overlap. *See* Syl. Pt. 6, *Folio,* 221 W. Va. 397, 655 S.E.2d 143. The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it. Syl. Pt. 2, *Jennings v. Farmers Mut. Ins. Co.,* 224 W. Va. 636, 687 S.E.2d 574 (W. Va. 2009) (quoting Syl. Pt. 1, *Lengyel v. Lint,* 167 W. Va. 272, 280 S.E.2d 66 (W. Va. 1981)).

In this case, Plaintiff alleged that the Defendants negligently and/or intentionally misrepresented to him the policies and procedures that were followed during the investigations, hearings, and appeals as it relates to Alleged Victims #1 and #2. Assuming Plaintiff's claim is true, Plaintiff's Second Amended Complaint fails to plead any facts which demonstrate how he was damaged by an alleged misrepresentation or any rights he was deprived of, under due process or otherwise, by this misrepresentation.

While Plaintiff vaguely alleged he was not given adequate opportunity to contest, appeal, or otherwise handle his defense in a "proper legal way", Plaintiff's Second Amended Complaint fails to plead any facts, whatsoever, that demonstrate Plaintiff was actually deprived of an opportunity to contest these charges. Assuming for the sake of argument if the Plaintiff were afforded the opportunity to contest the charges in the "proper legal way" as he claims in the Second Amended Complaint, Plaintiff failed to plead any facts that he was entitled to additional protections, additional procedural due process, additional hearings, or any additional review processes. In other words, the Plaintiff has clearly failed to establish factually how he was harmed by the alleged misrepresentation.

In fact, Plaintiff was afforded multiple hearings and appeals for every complaint filed against him. For each complaint the Plaintiff received notice of the charges, he was given the opportunity to respond to said charges, he was represented by an attorney at every proceeding, he was able to question and cross-examine witnesses, offer his own witnesses and evidence, and testified on his own behalf both before a review panel and to an appeal panel. As such, Plaintiff's Second Amended Complaint fails to plead sufficient facts to satisfy the required element of either a negligent or intentional misrepresentation claim as Plaintiff was afforded ample due process and has failed to plead any facts to demonstrate he was injured as a result of the alleged misrepresentation.

As Plaintiff's Second Amended Complaint has failed to plead sufficient facts to demonstrate how the alleged misrepresentation affected his ability to defend himself against these claims or how he was injured in any way, Plaintiff's misrepresentation claims fail to state a claim upon which relief can be granted. As such, Count V should be dismissed against Defendant MUBOG.

**F. To the extent Plaintiff is alleging Aiding and Abetting against this Defendant, this claim fails to state a claim upon which relief may be granted.**

Plaintiff's Second Amended Complaint fails to clearly allege whether or not Plaintiff is bringing an aiding and abetting claim against the MUBOG. To the extent Plaintiff is alleging such a claim, the same must be dismissed as this Court has previously held that MUBOG and its agents enjoys sovereign immunity from claims under the WVHRA, despite allegations of violations of federally protected civil rights. *See Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.* 2019 WL 1386403, at *8.

Beyond being immune from such a claim, Plaintiff's claim also fails to state a claim upon which relief can be granted against this Defendant. West Virginia has not defined the terms "aid" and abet" in its Human Rights Act. In *Larry v. Marion County Coal Company*, the District Court of the Northern District of West Virginia predicted that the Supreme Court of Appeals of West Virginia would follow other states' approaches to interpreting the term within their own state Human Rights Acts. 2018 WL 648371 at *10–11. In defining aid or abet, courts have applied the Restatement (Second) of Torts § 876(b) which holds that "for harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." 2018 *Id.* at *10; *see also Klug v. Marshall Univ. Joan C. Edwards Sch. of Med.*, 2019 U.S. Dist. LEXIS 51321, at *21 (agreeing with the *Marion* court's prediction of how the Supreme Court of West Virginia would interpret the term "aid" and "abet" within their own state Human Rights Acts)

To find liability for an unlawful discriminatory practice, it must me shown that the party knew an action was discriminatory and "substantial assistance or encouragement" was given to the employer to accomplish such discrimination. *Id.* at *11. A failure to question or review the decision-making process behind the discriminatory action would not be sufficient to find a person liable for aiding or abetting. *Id.*

Under our facts, Plaintiff failed to plead any specific acts of aiding and abetting on behalf of the MUBOG. The only allegation Plaintiff has made with respect to the aiding and abetting claim is directed at the actions of Defendant Ambrose. ECF 31, at ¶232-236. As the Second Amended Complaint wholly fails to make any allegations regarding the MUBOG's alleged "aiding

and abetting," this claim must also be dismissed against MUBOG for failing to state a claim for which relief can be granted.

**G. Plaintiff's claim for Punitive Damages against the MUBOG must be dismissed as said damages are not available under W. Va. Code §55-17-4(3).**

While Plaintiff's Second Amended Complaint makes a punitive damages claim against Defendants Ambrose and Rhodes, it is unclear whether Plaintiff is also making such claim against Defendant MUBOG. ECF 31 at Introductory Paragraphs, pg. 45; ¶5 of the **WHEREFORE** section. Pursuant to West Virginia Code § 55-17-4(3), "[n]o government agency may be ordered to pay punitive damages *in any action*." (emphasis added). The statute is unambiguous and does not leave room for any interpretation other than the recovery of punitive damages against a state agency is entirely forbidden. *W. Va. Reg'l Jail & Corr. Facility Auth. v. Est. of Grove*, 244 W. Va. 273, n. 17 (2020) (directing a trial court to consider the "prohibition" against punitive damages pursuant to West Virginia Code § 55-17-4(3) if the trial court found the defendant to be a state agency on remand). Here, to the extent Plaintiff is seeking punitive damages from MUBOG, Plaintiff's punitive damages claim against the MUBOG must be dismissed as they are a state agency and immune from punitive damages.

## V. Conclusion

**WHEREFORE**, for the reasons stated above, the Defendant, Marshall University Board of Governors, respectfully moves the Court to enter an Order dismissing all claims asserted against it in Plaintiff's Second Amended Complaint with prejudice and for any and all other such relief as the Court deems appropriate and just under the circumstances.

**MARSHALL UNIVERSITY**
**BOARD OF GOVERNORS**

**BY COUNSEL**

**/s/ Perry W. Oxley**

Perry W. Oxley, Esq. (WVSB #7211)
L.R. Sammons III, Esq. (WVSB #9524)
Jason E. Roma, Esq. (WVSB #9712)
Zachary T. Ramey, Esq. (WVSB #14382)
Oxley Rich Sammons, PLLC
517 9th Street, Suite 1000
P.O. Box 1704
Huntington, WV 25718-1704
poxley@oxleylawwv.com
lsammons@olxeylawwv.com
jroma@oxleylawwv.com
zramey@oxleylawwv.com
Phone: (304) 522-1138
Fax: (304) 522-9528

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**JOHN DOE,**

**Plaintiff,**

**v.** **Civil Action No. 3:25-cv-00743**

**MARSHALL UNIVERSITY**
**BOARD OF GOVERNORS AND**
**KELLY AMBROSE in her**
**individual and official capacities.**

**Defendants**

**CERTIFICATE OF SERVICE**

I, the undersigned counsel for Defendants, Marshall University Board of Governors and Kelly Ambrose, confirm that the foregoing "**MEMORANDUM OF LAW IN SUPPORT OF MARSHALL UNIVERSITY BOARD OF GOVERNORS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**" was filed electronically with the Clerk of the Court using the CM/ECF system on this **15th day of July 2026** with electronic notification and service of the same upon the following counsel of record:

Abraham J. Saad, Esq.
Hoyt Glazer, Esq.
Glazer Saad Anderson L.C.
320 9th Street, Suite B
P.O. Box 1638
Huntington, WV 25717-1638
*Counsel for Plaintiff*

***/s/Perry W. Oxley***
Perry W. Oxley, Esq. (WVSB #7211)