**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JOHN DOE,

Plaintiff,

v. CIVIL ACTION NO. 3:25-0743

MARSHALL UNIVERSITY
BOARD OF GOVERNORS,
JESSICA RHODES, in her individual
and official capacities, and
KELLY AMBROSE, in her individual
and official capacities,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Jessica Rhodes's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 36, Def.'s Mot.). For the reasons stated below, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

**BACKGROUND**

For the purpose of ruling on the Board's Motion, the Court accepts the following facts as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When Plaintiff John Doe was a student at Marshall University, three other Marshall students filed misconduct claims against him. ECF No. 31, 2d Am. Compl. ¶ 19; *see id.* ¶¶ 1, 75. One of these students—Jane Roe—claimed Doe had sex with her without her consent. *Id.* ¶ 51. Another student—Reggie Roe—alleged Doe kissed him without his consent. *Id.* ¶ 88. A third student—Jerry Woe—asserted Doe violated a "No Contact" order that required Doe to stay away

from him. *Id.* ¶ 104. Both Jane and Reggie Roe claimed Doe's misconduct occurred off-campus. *See id.* ¶¶ 25, 88, 103.

Defendant Jessica Rhodes, Marshall's Title IX Coordinator, appointed Defendant Kelly Ambrose to investigate the allegations. *Id.* ¶ 27. Rhodes sent Doe correspondence about the investigation on "Title IX Office" letterhead. *See id.* ¶¶ 28–29; ECF No. 15, Ex. A. The correspondence identified Rhodes as "Title IX Coordinator." *See* 2d Am. Compl. ¶ 29; ECF No. 15, Ex. A. But on January 11, 2024, Doe received a "Final Outcome Letter" for the Jane Roe complaint stating her allegations "f[e]ll under the Non-Title IX procedures." ECF No. 15, Ex. G 1 n.1.

A panel composed of three faculty members adjudicated each claim. 2d Am. Compl. ¶ 30. The panel concluded Doe sexually assaulted Jane Roe; it expelled him. *Id.* ¶ 75.

Doe sued, alleging Defendants violated state and federal law. *See generally id*. He alleges Rhodes, in particular, misled Doe and violated his Due Process rights by sending him correspondence suggesting the misconduct investigations would be governed by Title IX procedures. *See id.* ¶¶ 206, 209, 219, 228; ECF No. 43, Pl.'s Resp. 14–15, 17–19. He also alleges Rhodes violated his equal-protection rights and intentionally caused him to experience emotional distress. *See* 2d Am. Compl. 30, ¶ 252. Rhodes has moved to dismiss Doe's claims. *See generally* Def.'s Mot.

**ANALYSIS**

Rhodes argues Doe's claims against her should be dismissed for several reasons. *See generally* ECF No. 37, Def.'s Mem. But the Court need only address four: that Doe's claims are barred by the applicable statute of limitations, that Rhodes is immune from Doe's state-law claims, that Doe has failed to allege harm from Rhodes's purported misrepresentation, and that Doe has

failed to state an intentional-infliction-of-emotional distress claim.[1] *See id.* at 5–6, 12–15, 17, 19–20.

**A. Statute of Limitations**

*i. Claim Accrual*

According to Rhodes, Doe's claims have a two-year statute of limitations. *See id.* 4–5. Doe does not dispute this. But he argues the statute of limitations began to run less than two years ago. *See* Pl.'s Resp. 7.

Under West Virginia law, the statute of limitations for tort actions "begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Syl. Pt. 4, *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901 (W. Va. 1997).

Doe claims he originally thought the Final Outcome Letter for his case reflected a "belatedly discovered administrative error," Pl.'s Resp. 7—that is, he believed Marshall initially investigated Roe's allegations under Title IX but reclassified the investigation when the panel made a final determination. But on April 2, 2026, Defendants filed a Motion to Dismiss asserting that "Plaintiff was never investigated or punished under Title IX," and that "there was no Title IX investigation . . . ." ECF No. 12, at 4, 7. According to Doe, the Motion revealed, for the first time,

[1] Since the Court will dismiss Doe's federal claims on statute-of-limitations grounds, it will not address Rhodes's arguments that Rhodes is entitled to federal qualified immunity or that Doe has failed to state a § 1983 claim. *See* Def.'s Mem. 7, 11–12. Further, since the Second Amended Compliant does not allege Rhodes violated the West Virginia Human Rights Act (WVHRA), *see* 2d Am. Compl. ¶¶ 232–36, the Court disregards Rhodes's arguments related to that Count, *see* Def.'s Mem. 12–14.

that Rhodes had misled Doe about the procedures applicable to the misconduct investigation. Pl.'s Resp. at 7–8.

Despite the statement in Defendants' April 2 Motion to Dismiss, Doe's due-process claim is time-barred. In Doe's view, the Fourteenth Amendment requires that a "student know[] which process will resolve the charges against him." *Id.* at 17. Doe learned he was mistaken about the procedures Marshall used to resolve the charges as soon as he received the Final Outcome Letter. Accepting Doe's allegations as true, Doe therefore knew, as of January 11, 2024, that Rhodes had incorrectly suggested Marshall would use Title IX procedures to resolve his case. Accordingly, the statute of limitations for his due-process claim began to run on January 11, 2024.

The same is true for Doe's equal-protection claim. This claim is premised on Rhodes's allegedly disparate treatment of Doe and other Marshall students and faculty. *See* 2d Am. Compl. ¶ 174–177; Pl.'s Resp. 16. Doe has not explained how Defendants' prior Motion to Dismiss put him on notice of this disparate treatment.

Doe's negligent-misrepresentation claim is also time-barred. By January 11, 2024, Doe knew Rhodes had incorrectly suggested Title IX procedures applied to the adjudication.

That said, it is plausible the Motion to Dismiss gave Doe notice, for the first time, that Rhodes's alleged misrepresentation was intentional. If Doe was *never* being investigated under Title IX, Rhodes, as the Title IX Coordinator, probably would have known that. Accordingly, the Court will not dismiss Doe's intentional-misrepresentation and intentional-infliction-of-emotional-distress claims on statute-of-limitations grounds.

*ii. Relation Back*

Doe argues that, to the extent the statute of limitations on his claims has expired, those claims "relate back" to when Doe filed his original complaint.

"An amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back . . . ." Fed. R. Civ. P. 15(c)(1)(A). Under West Virginia law, "the naming of a defendant will relate back to the date the plaintiff filed the original complaint if:"

> (1) the claim asserted in the amended complaint arose out of the same conduct, transaction, or occurrence as that asserted in the original complaint; (2) the defendant named in the amended complaint received notice of the filing of the original complaint and is not prejudiced in maintaining a defense by the delay in being named; (3) the defendant either knew or should have known that he or she would have been named in the original complaint had it not been for a mistake; and (4) notice of the action, and knowledge or potential knowledge of the mistake, was received by the defendant within the period prescribed for commencing an action and service of process of the original complaint.

Syl. Pt. 4, *Brooks v. Isinghood*, 584 S.E.2d 531 (W. Va. 2003).

Doe has the burden to prove the relation-back doctrine applies to his claims. *See Covey v. Assessor of Ohio Cnty.*, 666 F. App'x 245, 248 (4th Cir. 2016) (per curiam). He has failed to provide any evidence showing Rhodes had notice of Doe's initial complaint. Doe argues the Court can "impute" notice, since she has the same counsel as, and shares an "identity of interest" with, the other defendants. But Doe has not explained how there is an "identity of interest" between Rhodes and the other defendants, and that Rhodes retained the same counsel as the other defendants after Doe sued her does not show she had notice of Doe's original pleading. Since Doe has not shown his claims against Rhodes relate back to his initial complaint, the Court will dismiss his § 1983 and negligent-misrepresentation claims.

**B. State Qualified Immunity**

Rhodes argues she has qualified immunity from Doe's remaining claims. *See* Def.'s Mem. 12–15. Under West Virginia law, qualified immunity only applies to "[g]overnment officials

performing discretionary functions . . . ." *Maston v. Wagner*, 781 S.E.2d 936, 947 (W. Va. 2015) (quoting Syl. *Bennett v. Coffman*, 361 S.E.2d 465 (W. Va. 1987)).

Here, Doe has plausibly alleged Rhodes acted outside her discretion. The Final Outcome Letter for Roe's complaint stated the complaint "f[e]ll under the Non-Title IX procedures" because "[t]he allegations did not occur in a Marshall program or activity . . . ." ECF No. 15, Ex. G 1 n.1. But according to Doe's Complaint, Rhodes initiated a Title IX investigation anyway. *See* 2d Am. Compl. ¶ 206; ECF No. 15, Ex. D 2 (stating Doe's hearing would use "Title IX Grievance Procedures" (emphasis in original omitted)); ECF No. 15, Ex. E 2 (same); ECF No. 15, Ex. F 1 (same). Rhodes claims she had authority to handle claims "falling outside Title IX's jurisdiction," ECF No. 45, at 2, but she does not suggest, let alone demonstrate, that she had authority to adjudicate claims falling outside Title IX *using Title IX procedures*. Since Rhodes plausibly exceeded her discretion, the Court will not dismiss Doe's state-law claims on qualified-immunity grounds.

**C. Failure to Allege Harm from Misrepresentation**

To make out an intentional-misrepresentation claim, a plaintiff must allege he was harmed by the misrepresentation. *See* Syl. Pt. 2, *Jennings v. Farmers Mut. Ins. Co.*, 687 S.E.2d 574 (W. Va. 2009). Rhodes argues Doe has failed to do so. *See* Def.'s Mem. 16–17. The Court disagrees. Doe's Second Amended Complaint asserts Doe "pursue[d] legal avenues . . . regarding Title IX only" and incurred "fees" due to Rhodes's alleged misrepresentation. 2d Am. Compl. ¶ 223. Since Doe has alleged harm, he plausibly states an intentional-misrepresentation claim.

**D. Failure to State an Emotional Distress Claim**

To "prevail on a claim for intentional or reckless infliction of emotional distress," a plaintiff must establish:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998).

Here, Doe has not plausibly alleged Rhodes's conduct caused Doe to suffer emotional distress. He has not explained how Marshall's Title IX procedures differ from its regular student-misconduct procedures. Accordingly, nothing indicates Rhodes's alleged misstatements contributed to Doe's expulsion and his resulting emotional distress. The Court will dismiss Doe's emotional-distress claim.

## CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Jessica Rhodes's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 36). The Court **DISMISSES** Counts II and IV of Plaintiff's Second Amended Complaint **with prejudice** to the extent they raise claims against Rhodes. The Court **DISMISSES** Plaintiff's negligent-misrepresentation claim against Rhodes **with prejudice**. The Court dismisses Count V's claim against Rhodes **without prejudice**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 25, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE