**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JOHN DOE,

Plaintiff,

v. CIVIL ACTION NO. 3:25-0743

MARSHALL UNIVERSITY
BOARD OF GOVERNORS,
JESSICA RHODES, in her individual
and official capacities, and
KELLY AMBROSE, in her individual
and official capacities,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Kelly Ambrose's Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 34. For the reasons stated below, the Court **GRANTS, in part**, and **DENIES, in part**, the motion.

## I.
## BACKGROUND

For the purpose of ruling on the Defendant Ambrose's Motion, the Court accepts the following facts as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When Plaintiff John Doe was a student at Marshall University, three other Marshall students filed misconduct claims against him. Sec. Am. Comp. ¶¶ 1, 19, ECF No. 31. One of these students—Jane Roe—claimed Doe had sex with her without her consent. *Id.* ¶ 51. Another student—Reggie Roe—alleged Doe kissed him without his consent. *Id.* ¶ 88. A third student—Jerry Woe—asserted Doe violated a "No Contact" order that required Doe to stay away from him

as the result of previous allegations of stalking. *Id.* ¶¶ 100, 104. Both Jane Roe and Reggie Roe claimed Doe's misconduct occurred off campus, while Jerry Woe alleged the conduct occurred on campus. *Id.* ¶¶ 25, 88, 103.

Defendant Jessica Rhodes, Marshall's Title IX Coordinator, appointed Defendant Ambrose to investigate the allegations. *Id.* ¶ 27. Rhodes sent Doe correspondence about the investigation on "Title IX Office" letterhead, and the correspondence identified Rhodes as the "Title IX Coordinator." *Id.* ¶¶ 28–29; *see* Ex. A, Formal Compl. by Title IX Coord. (for Jane Roe's allegations), ECF No. 15-1. A Notice of Investigation letter stated the matter would proceed with "Trained Title IX Coordinator(s), Investigator(s), Decision-Maker(s), Review Panel Member(s), or Informal Resolution Facilitator(s)" and it outlined certain rights under Title IX. *Id.* ¶ 28; *see* Ex. A, Notice of Invest. (for Jane Roe's allegations), ECF No. 15-1.

Following Ambrose's investigation, "[t]he same three-faculty panel heard the three unrelated claims against Plaintiff." *Id.* ¶ 30. Doe alleges that "[t]hey were—at all times—labeled as a Title IX Review Panel until January 2024 when the Final Outcome Letter referred to them as a Non-Title IX Review Panel for the first time." *Id*. Until that time, Doe claims he "was unaware that he was engaged in any process but a Title IX process under Title IX rules before a Title IX panel." *Id*. ¶ 76. In the end, the panel concluded Doe sexually assaulted Jane Roe and expelled him. *Id.* ¶ 75; Ex. H, Final Outcome Ltr. (for Jane Roe's allegations), at 25, ECF No. 15-8. The panel also determined the evidence did not support a finding of a hostile environment or stalking in the Jerry Woe case, but Doe did violate the No Contact Order on two occasions, so it recommended an extension of the No Contact Order and continuation of counseling and mental

health treatment. Ex. L, Final Outcome Ltr. (for Jerry Woe's allegations), at 13-15, ECF No. 15-12.[1]

Doe then sued, alleging Defendants violated state and federal law. *See generally* Sec. Am. Compl. As to Ambrose, Doe specifically alleges under 42 U.S.C. § 1983 that she violated his due process and equal protection rights (Count II) and his procedural due process rights (Count III). He further asserts she made intentional and negligent misrepresentations (Count V), aided and abetted unlawful discriminatory practices in violation of the West Virginia Human Rights Act (Count VI), and intentionally inflicted emotional distress (Count VIII). Ambrose argues all the claims against her should be dismissed.

## II.
## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. While the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and brackets omitted).

[1]In the section involving Reggie Roe, Doe does not expressly state in the Second Amended Complaint what the Final Outcome Letter said. *See* Sec. Am. Compl. ¶¶ 88-97. However, he does say he appealed the decision, so presumably it was a ruling against him. *See id.* ¶ 97. The Review Panel also heard a matter in which Doe was a Complainant against another student for retaliation related to the Jane Roe situation. The Review Panel found the evidence supported a finding of retaliation against the Respondent. Ex. C, Final Outcome Ltr. (John Doe as Complainant), at 4, ECF No. 15-3.

## III.
## ANALYSIS

### A. Qualified Immunity

As to Counts II and III brought pursuant to 42 U.S.C. § 1983, Ambrose argues she has qualified immunity under federal law. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). However, "if a public official engages in conduct 'that is entirely beyond [their] discretionary authority,' then they are not protected by this immunity." *Reeves v. Meddings*, Civ. Act. No. 3:20-0423, 2023 WL 4378137, at *2 (S.D. W. Va. July 6, 2023)[2] (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)).

Here, Rhodes, as the Title IX Coordinator, selected Ambrose to investigate the claims made against Doe. Doe insists that Ambrose was appointed as a Title IX investigator, and she did not have the authority to investigate and argue non-Title IX matters (those that occurred off-campus) before a Title IX panel. Sec. Am. Compl. ¶ 188. Instead, off-campus matters are handled by different personnel through the University's Director of Student Advocacy and Accountability Office. *Id*. at 3. Although Ambrose insists her "Final Report Title IX Investigation Report" in the Jane Roe matter informed Doe she followed "Non-Title IX procedures" investigating the off-campus conduct,[3] she identifies herself as a "Title IX Investigator" and states the Title IX Evaluation Panel recommended the formal investigation. As such, Doe asserts Ambrose had no

---

[2]Aff'd in part, appeal dismissed in part, No. 23-1823, 2025 WL 1392159 (4th Cir. May 14, 2025).

[3]Ex. D, Final Report Title IX Investigation Report, at 5, ECF No. 15-4.

authority whatsoever to investigate the Jane Roe and Reggie Roe matters because they are not covered by Title IX. Despite lacking any investigatory authority, Doe further claims the manner in which Ambrose actually conducted the investigation and presented her findings was riddled with glaring violations of his constitutional and statutory rights. Given these allegations, the Court finds Doe has plausibly alleged Ambrose exceeded her discretion and, therefore, will not dismiss Doe's claims on qualified-immunity grounds.

**B. Due Process**

Similarly, the Court rejects Ambrose's argument that Doe has failed to state due process claims in Counts II and III. Although Ambrose states she followed non-Title IX procedures in conducting her investigation, Doe disagrees with her assertion and alleges she and the other Defendants "engaged in a pattern and practice of operating outside the scope of the rules . . . to influence the hearings to produce their desired outcomes." *Id.* ¶ 175. Doe asserts Ambrose misled him, did not follow the rules, and thwarted his effort to present a meaningful defense, among other things. *Id.* ¶ 188. As a result, Doe claims he was expelled and lost educational opportunities, future earnings, and suffered other injuries. Regardless of whether or not Ambrose was the final decision maker, the Court finds Doe has raised factual issues that are best resolved on summary judgment or at trial. Thus, the Court denies Ambrose's motion to dismiss Doe's due process claims.

**C. Equal Protection**

Ambrose also argues that Doe's equal protection claim must be dismissed. "The Equal Protection Clause prohibits states from denying persons 'the equal protection of the laws.'" *Katti v. Arden*, 161 F.4th 217, 226 (4th Cir. 2025) (quoting U.S. Const. amend. XIV, § 1). It "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). As Ambrose is an employee of a

state-run federally-funded public university, the Equal Protection Clause proscriptions clearly apply.

To survive a motion to dismiss of an equal protection claim, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021) (citing *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011)). The Court finds that Doe has failed to meet that standard, as he only makes conclusory accusations and vague statements about others he believes were treated differently.

For instance, Doe states he can show other instances in which faculty members and female and male students were treated differently than him, but he does not allege their treatment was the result of anything Ambrose did and he does not plausibly allege they were similarly situated as him. *See* Sec. Am. Compl. ¶¶ 43-45. Moreover, his allegation that other male students were treated differently than him undermines his equal protection argument based on sex. Doe also complains that Ambrose gave credit to Jane Roe and to females who offered evidence against him, but discounted evidence from him and his witnesses. Yet, not only are Jane Roe and the witnesses not similarly situated to Doe, two of the witnesses Doe states Ambrose discounted were women. *See Id*. ¶¶ 54-58, 170. Finally, Doe alleges "Ambrose received concrete evidence that two or three [other] Marshall students had breached student conduct, provided illegal drugs to students, and engaged in inappropriate activity with high school students but disregarded that information and did not pursue any school action against them." *Id*. ¶¶ 81, 190. However, Ambrose's role was that of an investigator. She is not responsible for initiating actions against other students. That authority

rests with others, and it is not evidence that Ambrose treated Doe differently because of his sex.[4] Thus, the Court finds Doe has not plausibly alleged a violation of his equal protection rights and **GRANTS** Ambrose's motion to dismiss this claim.

**D. Intentional and Negligent Misrepresentation**

Next, Ambrose argues Doe's claim of intentional and negligent misrepresentation claim in Count V must be dismissed against her for failing to state a claim. The basis of Doe's claim is that he was repeatedly misled and falsely told that Title IX applied to the accusations made by Jane Roe and Reggie Roe, and he relied upon these misrepresentations in defending himself. Doe asserts "[t]he handling of Title IX investigation, criminal investigations, and/or Student Conduct investigations are handled differently, with different procedures, standards, and the ability to contest such hearings after they completed." *Id.* ¶ 221. As a direct and proximate result, Doe maintains "he was not given adequate opportunity to contest, appeal, or otherwise handle his defense in the proper legal way" *id.* ¶ 222, and he "was forced to pursue legal avenues and fees regarding Title IX only to be told that the matter was never a Title IX matter." *Id.* ¶ 223.

Ambrose insists Doe was informed in her July 28, 2023 Final Report Title IX Investigation Report that Non-Title IX procedures were followed for the Jane Roe investigation. *See* Ex. D, Final Report Title IX Investigation Report, at 5. However, the investigation began on March 8, 2023,[5] months before he received the Report, and it is at least arguable that the report is internally inconsistent by referring to it as a "Title IX Investigation Report" led by a Title IX investigator before a Title IX Evaluation Panel, but then declaring Non-Title IX procedures applied. *See*

[4]Doe also does not indicate the sex of those he alleged were treated differently are. *See id.* ¶ 81.

[5]*See* Ex. A, Notice of Investigation, ECF No. 15-1.

*generally* Ex. D, Final Report Title IX Investigation Report. Whether or not Doe was either negligently or intentionally misled into believing Title IX procedures applied and whether that process ultimately caused him harm are issues of fact. It is sufficient at this point that Doe has stated a plausible claim. Therefore, the Court **DENIES** Ambrose's motion to dismiss this claim.

### E. Aiding and Abetting a Violation of the West Virginia Human Rights Act

Ambrose argues she is entitled to sovereign immunity on Count VI, which alleges that she aided and abetted Marshall University in discriminating against Doe on the basis of sex in violation of the West Virginia Human Rights Act (WVHRA). Sovereign immunity in West Virginia is found in Article VI, Section 35 of the West Virginia Constitution, which provides:

> The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

W. Va. Const. Art. VI, Sec. 35. The West Virginia Supreme Court has explained the purpose of sovereign immunity "is to prevent the diversion of State monies from legislatively appropriated purposes. Thus, where monetary relief is sought against the State treasury for which a proper legislative appropriation has not been made, sovereign immunity raises a bar to suit." *Mellon–Stuart Co. v. Hall,* 359 S.E.2d 124, 129 (W. Va. 1987) (citations omitted and footnote omitted). "This constitutional grant of immunity is absolute and . . . cannot be waived by the legislature or any other instrumentality of the State." *Id*. (citations). Nevertheless, the West Virginia Supreme Court has recognized certain exceptions to sovereign immunity.[6] In line with one of these exceptions, this Court previously ruled that, although the Marshall University Board of Governors

[6]*See Univ. of W. Virginia Bd. of Trs. ex rel. W. Virginia Univ. v. Graf*, 516 S.E.2d 741, 745-46 (W. Va. 1998) (listing exceptions that have been recognized).

(MUBOG) is entitled to sovereign immunity for money damages, Doe's claim for injunctive relief can proceed.[7]

In Count VI, Doe alleges "Ambrose, in her critical role as Title IX Investigator, provided substantial assistance and encouragement to the discriminatory conduct of Marshall in depriving [him] of his legal rights on the basis of sex." Sec. Am. Compl. ¶ 235. Ambrose asserts sovereign immunity extends to her because Doe alleges she was acting in her official capacity as an employee of MUBOG in aiding and abetting Marshall's discriminatory conduct. To pierce immunity, both parties argue Doe must plausibly allege Ambrose acted fraudulently, maliciously, or oppressively. In support of this position, however, both parties cite cases applying the concepts of fraud, maliciousness, and oppression to qualified immunity, not sovereign immunity. *See* Mem. of Law in Supp. of Def. Ambrose's Motion to Dismiss, at 12 n.1, ECF No. 35; Pl.'s Resp. in Opp. to Def. Ambrose's Motion to Dismiss, at 17, ECF No. 42; Reply in Supp. of Def. Ambrose's Motion to Dismiss, at 17, ECF No. 46. As Ambrose specifically argues that Count VI must be dismissed because of sovereign immunity, the Court will not address qualified immunity as to this claim.

As particularly relevant to Count VI, this Court in *Klug v. Marshall University Joan C. Edwards School of Medicine*, Civ. Act. No. 3:18-0711, 2019 WL 1386403 (S.D. W. Va. Mar. 27, 2019), considered whether sovereign immunity barred a claim against the MUBOG and an employee, in his official capacity, for an alleged violation of the WVHRA. 2019 WL 1386403, at *8. In ruling, the Court discussed the concept of sovereign immunity and recognized that "'a claim

[7] *Doe v. Marshall Univ. Bd. of Governors*, Civ. Act. No. 3:25-0743, 2026 WL 2454945, at *2 (S.D. W. Va. Aug. 21, 2026); *see Univ. of W. Virginia Bd. of Trustees ex rel. W. Virginia Univ.*, 516 S.E.2d at 744 (internal quotation marks and citation omitted)) (stating "the sovereign immunity doctrine is implicated when retroactive money relief against the State is sought, but does not operate to bar an award which is prospective in nature").

that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)). Applying this principle, the Court determined sovereign immunity applied and barred the claim against the MUBOG and the employee in his official capacity. *Id.*

With respect to Doe's claim, he expressly states Ambrose aided and abetted Marshall's discriminatory conduct in violation of the WVHRA "in her critical role as Title IX Investigator." Sec. Am. Compl. ¶ 235. Although Doe maintains elsewhere that Ambrose exceeded the scope of her authority as a Title IX Investigator to avoid qualified immunity, Doe's specific allegation in Count VI is that Ambrose used her official capacity as a Title IX Investigator to further Marshall's pattern and practice of discrimination. *See id.* ¶ 35 ("Following the 2022 outcry and lawsuits, Marshall began a discriminatory pattern and practice against males accused of sexual misconduct."). As such, the Court finds any claim for monetary damages against Ambrose in her official capacity for aiding and abetting Marshall in violating the WVHRA is barred by sovereign immunity, but Doe's claims for prospective declaratory relief can proceed.[8] Thus, the Court **GRANTS, in part,** and **DENIES, in part**, Ambrose's motion to dismiss Count VI.[9]

---

[8]Doe states in the Second Amended Complaint that he is only seeking prospective declaratory relief against Ambrose in her official capacity. *Id.* ¶ 4. However, he also states in Count VI that he has suffered several economic damages as a result of her actions. *See id.* ¶ 236. Therefore, to the extent there may be an inconsistency, the Court makes clear that Doe cannot seek monetary damages for his claim that Ambrose acted in her official capacity by aiding and abetting a violation of the WVHRA.

[9]In her Reply, Ambrose alternatively argues that Doe has failed to state a plausible claim of aiding and abetting. *See* Reply in Supp. of Def. Ambrose's Motion to Dismiss, at 17-18. However, as the Board did not raise this argument in its initial brief, the Court will disregard it. *See Suchin v. Fresenius Med. Care Holdings, Inc.*, 715 F. Supp.3d 703, 711 (D. Md. 2024) (quoting *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006)) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or

**F. Intentional Infliction of Emotional Distress**

Finally, Ambrose argues that Doe's claim for intentional infliction of emotional distress (IIED) in Count VIII must be dismissed. As this Court stated in its earlier Memorandum Opinion and Order dismissing this claim against Rhodes, to state an IIED claim, a plaintiff must establish:

> "(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

*Doe v. Marshall Univ. Bd. of Governors*, Civ. Act. No. 3:25-0743, 2026 WL 2497326, at *3 (S.D. W. Va. Aug. 25, 2026) (quoting Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998)). Certainly, "[t]hreadbare recitals of the elements of a cause of action" are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), and a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go *beyond all possible bounds of decency*, and to be regarded as *atrocious*, and *utterly intolerable in a civilized community*." *Keyes v. Keyes*, 392 S.E.2d 693, 696 (W. Va. 1990) (internal quotation marks and citation omitted; emphasis added in *Keyes*).

Here, Doe alleges Ambrose was biased against him in her investigative role, discredited his witnesses, hindered his defense, and skewed evidence and the presentation of the case, causing him to suffer "fear, anxiety, humiliation, . . . reputational harm," and "extreme emotional distress." *Sec. Am. Compl.* ¶¶ 250-252. Upon review, the Court finds Doe's allegations of what Ambrose did outside her authority as a Title IX investigator, assuming the truth, plausibly alleges conduct that

memorandum will not be considered.").

may be considered so outrageous that it constitutes intentional infliction of emotional distress. Therefore, the Court **DENIES** the motion to dismiss the IIED claim.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS, in part**, and **DENIES**, **in part**, Kelly Ambrose's Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 34. The Court **DISMISSES** Doe's Equal Protection claim in Count II and his claim against Ambrose in her official capacity for money damages for Aiding and Abetting a Violation of the WVHRA in Count VI. The Court **DENIES** the remainder of Ambrose's motion.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: October 27, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE